THE PRESIDENT AND DIRECTORS OF THE BORDENTOWN & SOUTH AMBOY TURNPIKE ROAD v. THE CAMDEN AND AMBOY RAIL ROAD AND TRANSPORTATION COMPANY.

On demurrer.

The Charter of the Camden and Amboy Rail Road and Transportation Company, authorizing their use of steam engines upon their road, the Company is not responsible for the injury or disturbance resulting from the use of such engines near the road of a turnpike company previously incorporated, unless the right to use such engines is exercised in an extraordinary and unlawful manner not contemplated or warranted by the legislature.

The declaration in this case, contains a number of counts, to the first four of which, the defendants have so pleaded as to raise the question now submitted for the decison of the court.

The first count charges, substantially, that the plaintiffs on the 1st of June 1830, and long before and since, were the owners of the turnpike road, leading from Bordentown in the county of Burlington, to South Amboy, in the county of Middlesex, and had right to demand tolls thereon; that the defendants knowing this, but contriving to deprive them of the benefit of their said road and tolls, and to disturb them in their franchise after-

wards constructed a rail road between said points, running for twenty miles of the distance, parallel to said turnpike road, and within twenty feet of it, and crossing it in six different places, and have continued their said rail road and used it with engines which emitted fire and smoke near to and on and over said turnpike road, and corrupted the air and created alarming appearances, so that it became dangerous for travellers to pass and repass said road, whereby the plaintiffs have been hindered and disturbed in their said franchise, and deprived of their tolls.

There is nothing in the second, third and fourth counts so variant from the first, as to change the question submitted, save that the fourth count lays the injury as having been done in the township of Chesterfield, in the county of Burlington.

To these several counts, the defendants filed their 6th, 7th and 8th pleas.

The 1st of which is, in substance, " That in February 1830, the defendants were incorporated by an act of the legislature of New Jersey, in which it was among other things enacted, that to facilitate the objects of said act, the defendants were invested with all the rights and powers necessary to survey, lay out and construct a rail road with all necessary appendages, from the Delaware river to Raritan Bay, and to enter upon all lands for the purpose of exploring, surveying and laying out said road; and when the location should be determined upon, and a survey deposited in the Secretary's office, then it should be lawful for said defendants to enter upon said lands, and do all things thereon necessary for the construction of said road, and take and use all lands and materials that might be required in such construction, subject to such compensation as is therein afterwards provided.    And that the said defendants might from time to time decide upon the description of carriages to be used upon said road when completed, the time of starting and rate of travelling."— After reciting other parts of the act, and supplement thereto passed the 15th of March, 1832, which vests in the defendants, the right to change the location of their road; the plea proceeds to aver that on the 21st day of December, 1830, the defendants surveyed, laid out and located the said road, pursuant to said act, and on the 24th day of the same month, deposited a survey of the route, in the Secretary's Office; and that afterwards on the

30th day of April, 1833, they altered the location of said road, pursuant to the authority given them by said supplement; and filed a survey of such alteration, in the office aforesaid, and that by force of said acts, they became a body politic and corporate with power to construct a rail road from the Delaware river to Raritan Bay, for the purpose of effecting an expeditious and complete line of communication from Philadelphia to New York;— and in the execution of said powers, and by force and virtue of said acts, they did survey, lay out and locate said road on the several courses set down in said survey, and did construct a rail road within the bounds of said location, as they lawfully might do, doing no unnecessary damage to private or other property. The plea further avers, that after the construction of said road, at the several times when, &c., the defendants in order to carry into effect, the object of their incorporation, at the said several places, in which, &c., did set up and use upon their said road, a number of locomotive engines worked and propelled by fire and steam, to which have been attached a large number of cars and carriages for the transportation of merchandise and passengers; and continued the same, during the time mentioned in said declaration as they lawfully might do for the cause aforesaid; and did thereby necessarily exhibit some unusual appearances, create some smoke, and emit some sparks, and make some noise, which are the supposed grievances of which the plaintiffs in their said declaration, complain.

The 7th plea is substantially as the former, reciting their act of incorporation in more general terms; and by virtue of said acts, justifying the construction of said rail road contiguous to, and crossing the said turnpike road.

The 8th plea in addition to the matters of defence contained in the two former, avers that the said rail road was made and constructed by the defendants, as a public highway for the transportation of merchandise and passengers, and under and by virtue of said acts of the legislature. And that by said acts, they were authorized and required to decide on the description of carriages to be used upon said road, &c.; and that the use of the locomotive engines upon the said rail road, is necessary to perfect an expeditious and complete line of communication from Philadelphia to New York, and that the same were set up and used and con-

Bordentown and S. Amboy T. P. Co. v. Camden and Amboy R. R. Co.

tinued on said road, pursuant to the decision of the Directors of " the Camden and Amboy Rail Road and Transportation Company," as lawfully might be done.

To these several pleas, the plaintiffs have filed a general demurrer, and the defendants have filed their joinder.

NEVIUS, J. Before proceeding to examine the validity of those several pleas, it becomes necessary to decide the question raised by the defendants' counsel, as to the substance of the declaration ; for it is an established rule, that on a demurrer to a plea, if the prior pleading be defective in substance, judgment must be given against the party pleading it. It is insisted that this declaration, though in form is in case, is in substance a declaration in trespass, or that the injury charged to be done, is a trespass *vi et armis*, or that it contains a complaint both in case and trespass, being an illegal joinder of actions ; and therefore that judgment should be rendered against the plaintiffs, on this demurrer. The injury complained of, is that the defendants constructed a rail road parallel and near to the plaintiffs' road, and crossing it in six different places, and used it with engines, so that it became dangerous for travellers to pass and repass on the plaintiffs' road, whereby the plaintiffs have been disturbed in their franchise. The complaint clearly set forth, is that the defendants, by the use of engines along and over the turnpike road, hindered and disturbed the plaintiffs in their franchise, and in the receipt of their accustomed tolls. For a disturbance of a franchise, case is clearly the proper form of remedy. Here the injury is consequential and not direct, it is hindering travellers from passing on the road ; by means of the fire and smoke, noise and unusual appearances of the defendants' machines, used adjacent to, as well as upon the road ; whereby the plaintiffs have lost their accustomed tolls ; and although in describing the mode in which this injury has been effected, the plaintiffs have charged among other things, an entry on their lands, yet such entry is not distinctly alleged as the ground of complaint. But suppose the injury arose in part from the entry upon the plaintiffs' lands, and in part from the use of the engines along the line, and adjacent to their lands, the whole being one continued act of the defendants, and for that cause could be esteemed both direct and con-

sequential, the plaintiffs might elect to bring case or trespass.—
*McAllister* v. *Hammond*, 6 *Cowen's R.* 342, and in describing the
act complained of, could not avoid stating the entry.   The plain-
tiffs too, may waive the immediate, and go for the consequential
injury.    The declaration, therefore, is in my opinion, well
drawn and not defective.

The counsel in support of demurrer, contend that these pleas
are defective in that they contain no averment that the defendants
have acquired title to the plaintiffs' lands, by agreement or as-
sessment, or in any other mode provided by their act of incor-
poration.

It is true that these pleas contain no such distinct averment,
nor is it necessary that they should.    So far as regards the com-
plaint, it being in truth for consequential damages, not for the
trespass by entry, it is no matter whether the defendants had ti-
tle or not.    But the pleas do aver that by virtue and pursuant to
their act of incorporation, they made their survey, located and
constructed their road, where by law they might construct it, and
that pursuant to the authority in them vested by said act, they
used the engines upon their said road, as by said law they had a
right to do.    This is substantially an averment that they had
done all things required by their charter, and that so far as their
charter warranted, they were fully authorized to do the acts com-
plained of.    The exception, therefore, to the pleas in this respect,
is not well taken.    But admitting that the pleas are correct and
well pleaded, so far as regards form, it is insisted that they con-
stitute no defence or justification for the acts complained of—
and this presents, in fact, the only true question involved in the
case.

Upon this point, it is insisted by the plaintiffs,

1st. That a legislative authority to construct a rail road,
does not include an authority to use a locomotive engine up-
on it.

2d.  That a locomotive engine used upon, or adjacent to a pub-
lic highway, is a nuisance—and

3d.  That if the use of such engines is authorized, either by
the expressed grant of the legislature, to the defendants, or by a
fair legal construction of their charter, still that the defendants
cannot set up such authority by way of defence or justification,

to an injury to another charged and proved as the consequence of such use.

I will consider these points in the order in which they are presented.

1st. The legislature of New Jersey, by an act passed the 4th of February, 1830, authorized the laying out and construction of a rail road from the Delaware river to Raritan bay, and incorporated the defendants into a company to effect the object designed, and invested them with power to determine the description of carriages to be used upon said road, the weight to be carried, the times of starting, and rate of travelling thereon. And imposed a penalty on any person who should wilfully obstruct said road, or injure or destroy the carriages or machines of the company; and also made it the duty of the company to construct and keep in repair, proper passages where any public or other road should cross the same. Here is a clear legislative authority to construct a rail road, to own, and by necessary implication to use machines and engines upon it, and to cross or intersect private or other roads, and investing them with all rights, powers and privileges necessary to perfect an expeditious and complete line of communication between Philadelphia and New York. All grants are to be construed according to the ordinary and natural sense of the terms used.

When this charter was granted, although rail roads were of recent introduction here, yet their character and the mode of using them, were well known to the legislature, and the authority to make and use them, includes the authority to use them in such mode, by such carriages and machines as were ordinarily used upon such roads. This would be a fair and legal construction of the charter of the defendants, and their powers under it, even if the act had made no reference to machines, but the use of that term, more clearly vindicates that the legislature contemplated the use of steam engines upon the road.

I am of opinion therefore, that the grant to the defendants to construct and use a rail way, is also an authority to them to use locomotive engines upon it.

2d. It is insisted that the use of a steam engine upon or near a public highway, is a nuisance. If I am right in the position that the charter of the defendants contemplated and au-

thorized the use of steam engines on their road, then such use can never be construed a public nuisance; for that which is authorized by law, is in itself lawful, and can never be the subject of indictment. The use of steam, however, though warranted by law on rail roads, may nevertheless work a private injury, and thereby become a private nuisance, for which, a remedy may be had by the party injured by action.

This leads me to the consideration of the 3d point taken by the plaintiffs, to wit: that even if the defendants are by law authorized to use steam power on their road, it must be done in such way as not to interfere with or impair the rights of the plaintiffs or any one else and if they do so interfere with or disturb the rights of others, their charter constitutes no defence or justification, and that these pleas, therefore, are defective and no answer to the plaintiffs' complaint.

This court has decided in the case of *Johnsons* adsm. *Sinnickson*, 2 *Harrison*, 129, that an injury to private property, by an individual acting under legislative authority, cannot be justified unless the act causing the injury, was done by him as the agent or in behalf of the government, and to effect an object of public interest. To apply this principle to the present case. The defendants in the construction and use of their road, are not acting in the capacity of public agents, but as an incorporation pursuing their own interests in the mode warranted by their charter, and if in the lawful exercise of this power, they inflict an injury upon the private rights of others, they must respond in damages for such injury. Such injury, however, must be the natural and direct result of the act itself [as in the case referred to, where the overflowing of the plaintiff's land was the direct and natural consequence of the erection of the dam by the defendants] and not a consequence which results from the fears, prejudices, passions or caprices of the public; for in the former case, the damages may be ascertained by clear and precise evidence, whilst in the latter, there is no rule by which they can be determined.

In the present case, the complaint is that the defendants, by the use of steam power upon their road, have prevented persons before accustomed to travel the plaintiffs' road, from continuing to do so. It is not pretended that the defendants have erected or caused any physical obstruction against such travelling, and

if such has in truth been the effect of the use of engines, it is an effect founded upon the fears and apprehensions of accident and danger, which the public may entertain, or upon the advantages and facilities which the defendants themselves have offered to the public. And it would be difficult, if not absolutely impossible to determine whether the reduction of the plaintiff's tolls, was caused by the inducements which the defendants have offered to the public, by an easier and more expeditious mode of conveyance, or by the alarm and apprehension excited by the use of steam power.

Again the complaint here, is for the disturbance of a franchise, which cannot be effected except by the exercise of some unlawful practices, as by a physical obstruction of the road itself, by unlawfully creating a nuisance upon or near the road, by unlawful menaces or false and fraudulent representations and persuasions, thereby preventing persons from using the plaintiff's road as before. These constitute the injury of disturbance. But it cannot arise from the performance of a lawful act.

If then the defendants are authorized by their charter, to use steam engines upon their road, whatever may be their legal responsibility in many cases, for private injuries resulting from such use, they are not responsible for the injury of disturbance of the plaintiff's franchise, unless they have exercised that right in an extraordinary and unlawful manner not contemplated or warranted by the legislature.

I am of opinion that the pleas demurred to, are not only good in form, but in substance; and are a legal answer to the four counts to which they are pleaded; and that the demurrer should be overruled.

HORNBLOWER, C. J., and FORD, WHITE and DAYTON, Justices, concurred.

*Demurrer overruled.*

CITED in *Vandegrift* v. *Rediker*, 2 *Zab.* 188; *D. & R. Can. Co.* v. *Lee*, 2 *Zab.* 247; *Tinsman* v. *Bel. Del. R. R. Co.*, 2 *Dutcher* 171; *Hinchman* v. *Paterson Horse R. R. Co.*, 2 *C. E. Gr.* 77.